G. Blair McCune
Attorney at Law
425 G St., Suite 620
Anchorage, Alaska 99501
Tel. (907) 644-8568
Fax (907) 644-9008
E-mail: mccune@gci.net

Attorney for Defendant

FILED
US DISTRICT COURT
DISTRICT OF ALASKA

2005 DEC -2 PM 2:51

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | Case No.   A03-0017 CV (HRH) |
| Plaintiff, | ) | [A99-0062-CR (HRH)] |
| | ) | |
| vs. | ) | **MOTION FOR CERTIFICATE** |
| | ) | **OF APPEALABILITY** |
| DONALD RITCHIE, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant Donald Ritchie, by counsel, G. Blair McCune, Attorney at Law, moves this court to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c). In conjunction with this motion, Defendant is also filing a notice of appeal from the final judgment dismissing his application for post-conviction relief under 28 U.S.C. § 2255.

**I. Certificate of Appealability Standards**

Under *Fed. R. App. P.* 22(b), if an applicant in a 28 U.S.C. § 2255 proceeding "files a notice of appeal, the district judge who rendered the judgment must either issue a certificate of appealability or state why a certificate should not issue." Based on the following argument and authority, Defendant respectfully requests that this court issue a certificate of appealability.

1

Defendant acknowledges that the standards for issuing a certificate of appealability are high. Under 28 U.S.C. § 2253(c)(2) a certificate may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." Although the language of 28 U.S.C. § 2253 is not entirely clear on this matter, district court judges do have authority to issue certificates of appealability. United States v. Asrar, 116 F.3d 1268 (9th Cir. 1997).

## II. Grounds for Issuing a Certificate of Appealability

Defendant requests a certificate of appealability on the grounds set out below. These grounds are addressed in the same order they were addressed in this court's *Decision on Motion to Vacate (Decision)*. Docket No. 228.

Mr. Ritchie has requested that this court consider this court's response to questions Mr. Ritchie asked at the end of his sentencing on November 2, 1999. After this court advised Mr. Ritchie of his right to a direct appeal to the Ninth Circuit, the following exchange took place:

> [MR. RITCHIE]: Could I get a certificate of availability (sic, appealability) right now?
>
> THE COURT: Can you get a what?
>
> [MR. RITCHIE]: A certificate of availability (sic, appealability).
>
> THE COURT: I don't think you need a certificate in a situation like this. I think you've got an absolute right to appeal everything.
>
> [MR. RITCHIE]: I was just reading this book I have[,] and it says to ask for that.
>
> THE COURT: Now there -- there -- there are lots of situations where that comes up, but I don't think this is one of them. And

G. Blair McCune
Attorney at Law
425 G. St., Suite 620
Anchorage, AK 99501-2137
Tel. (907) 644-8568, Fax (907) 644-9008
Email: mccune@gci.net

G. Blair McCune
Attorney at Law
425 G. St., Suite 620
Anchorage, AK 99501-2137
Tel. (907) 644-8568, Fax (907) 644-9008
Email: mccune@gci.net

> if you need it, you've got it.
>
> [MR. RITCHIE]: I need it, please.
>
> THE COURT: You've got it. Anything else we need to do, Mr. Randell?

*Sentencing Transcript* at 5.

Counsel understands that, in context, this court may have been referring solely to what Mr. Ritchie needed to file a direct appeal. However, Mr. Ritchie personally believes that this court was making a promise to him that a certificate of appealability would be issued when he needed it. Of course, this court will know what the intent of the statements was.

### A. Ground One: Ineffective Assistance of Counsel

#### 1. Motion to Suppress Evidence

##### a. Warrantless Search

In the *Decision*, this court concluded that the warrantless search of the 17th Avenue residence was illegal. *Id.* at 7. However, this court also concluded that evidence seized pursuant to a subsequent search warrant was not the fruit of the earlier illegal search. *Id.* at 11. Despite these conclusions, Defendant maintains the he has made a substantial showing of a violation of a constitutional right on this issue, and a certificate of appealability should be granted.

The question of whether the subsequent search warrant was tainted (or was the fruit of) the prior illegal search basically revolves around whether the warrant was based on evidence from an untainted "independent source." *See Murray v. United States*, 487 U.S. 533, 108 S.Ct. 2529 (1988).

Defendant pointed to Attachment A to the search warrant as evidence that was

3

not derived from an independent source. Defendant must acknowledge that this court had evidence on which to base a finding that Detective Koch intended Attachment A to be a generic list of items that might be found in a place where methamphetamine was being manufactured. *Decision* at 9-10. But the issue is not what the detective intended, the issue is how Attachment A was presented to the magistrate considering the search warrant application.

In ¶ 47 of his affidavit Detective Koch stated that he walked through the residence. In ¶ 51 of his affidavit, the detective stated that: "[b]ased upon the above information I believe the items listed on Attachment A will be found" at the residence and other residences. Defendant also pointed out that on the search warrant itself the magistrate stated that the warrant was being issued based on the detective's affidavit and that "there is now being concealed property, namely: see, Attachment A." *Evidentiary Hearing Transcript* at 48-49; *Exhibit* A. In addition, in ¶ 47 of the affidavit the detective stated that Heather Horner "told me [Mr. Ritchie] was not home at the moment but did acknowledge his living there."

Based on the way that Detective Koch presented Attachment A to the magistrate, there is a substantial question as to whether the magistrate would have understood Attachment A to be a generic list. Defendant continues to maintain that it was more likely the magistrate would have considered Attachment A to be based on actual observations made during the illegal search. Therefore, Defendant maintains that his trial attorney provided ineffective assistance of counsel in failing to file a motion to suppress

G. Blair McCune
Attorney at Law
425 G. St., Suite 620
Anchorage, AK 99501-2137
Tel. (907) 644-8568, Fax (907) 644-9008
Email: mccune@gci.net

4

evidence based on illegal search and seizure.[1]

### b. Probable Cause

Defendant also claimed that Detective Koch's affidavit did not establish probable cause because it failed to connect Mr. Ritchie with criminal activity at the 17th Avenue residence. Defendant respectfully disagrees with this court's conclusion that a motion to suppress based on this claim would have been "frivolous." *Decision* at 12. Defendant requests a certificate of appealability on this issue as well.

Defendant must acknowledge that the affidavit does state that after Mr. Adam Hankins was arrested he said Mr. Ritchie manufactured methamphetamine at the 17th Avenue residence. *Affidavit* at ¶ 41. But Defendant continues to maintain that Mr. Hankins was not a reliable informant whose information concerning Mr. Ritchie and the 17th Ave residence was corroborated.

First, Defendant believes that this court was mistaken in saying that confidential informant P99-14 (as opposed to Mr. Hankins) ever stated that "there was criminal activity occurring at the house on 17th Avenue ... ". *Decision* at 11. P99-14 stated that Don Ritchie lived at 13th & Eagle Street, not on 17th Avenue. *Affidavit* at ¶ 15. Based on Defendant's review of the affidavit, P99-14 never gave Detective Koch information concerning criminal activity at the 17th Avenue residence. Also, P99-14's information may

---

[1] Mr. Ritchie claimed that he only saw Detective Koch's affidavit after it was attached to the Government's initial opposition to his § 2255 motion. *Docket No.* 112, Exhibit 1. *See* Mr. Ritchie's *Memorandum of Points and Authorities* at 14 n.2. *Docket No.* 101. Mr. Ritchie claimed that the government withheld affidavit from both him and his attorney, and, therefore, the attorney did not make any sort of tactical decision based on a review of the affidavit. *See* Mr. Ritchie's *pro se Motion to Amend to (sic) Section 2255* at 12. *Docket No.* 173.

G. Blair McCune
Attorney at Law
425 G. St., Suite 620
Anchorage, AK 99501-2137
Tel. (907) 644-8568, Fax (907) 644-9008
Email: mccune@gci.net

5

have been stale. Detective Koch said that P99-14 told him he was recently released from jail. *Affidavit* at ¶ 14. P99-14 did not say how long he was in jail. Therefore, there is no way to know how stale his information concerning Mr. Ritchie was.

Defendant must acknowledge that there was some information by other informants concerning activity at the 17th Avenue residence. *Decision* at 11 n.18. But Defendant contends that this information is stale and provided little corroboration. JP-103 gave the police an interview in early April 1999. Most of her information involved another methamphetamine operation. But she also claimed to know someone named "Don" who was a "meth cook." She gave directions, a description of Don's house, and a telephone number. *Affidavit* at 18-19. Although this information matched the 17th Avenue residence, no information was provided as to JP-103's basis of knowledge or how stale the information might be. The next item merely identified a blue sedan as being seen both at the house of a precursor supplier and the 17th Avenue residence. *Affidavit* at ¶ 45. Finally, an unidentified person was reported to have called "the drug hotline" and said that Ms. Horner manufactured methamphetamine near the Northway Mall and gave her phone number. Defendant contends that this information was insufficient to corroborate Mr. Hankins' allegations.

In the *Decision*, this court cited *United States v. Celestine*, 324 F.3d 1095 (9th Cir. 2003) on the standards for probable cause. *Decision* at 10. Defendant certainly agrees that *Celestine* sets out the correct standards, but the case is also pertinent because it provides an example of what should be considered sufficient corroboration. In *Celestine*, the police had information from an anonymous informant that a marijuana growing operation was occurring at a house that resembled a castle at a particular location. Instead of relying only on informants, the police actually undertook an investigation. The police compared the

G. Blair McCune
Attorney at Law
425 G. St., Suite 620
Anchorage, AK 99501-2137
Tel. (907) 644-8568, Fax (907) 644-9008
Email: mccune@gci.net

6

electrical consumption at the castle-like house with similar houses in the neighborhood. The police found that twice as much electricity was being consumed at the castle-like house. *Id.* at 1098. The police also searched the trash from the house and found clear evidence of hydroponic culture. In addition, a pair of scissors with marijuana residue was found in the trash.[2]

In contrast, in the present case the police relied on stale and sketchy information from informants. Defendant acknowledges that there was ample corroboration in the affidavit that Mr. Hankins was manufacturing methamphetamine. In fact, Mr. Hankins was arrested and admitted as much. But Mr. Hankins was clearly an informant from the criminal milieu who was trying to do as much as he could to curry favor with the police. Therefore, corroboration of Mr. Hankins' allegations of criminal activity currently happening at the 17th Avenue residence was essential. In the present case, there was no actual criminal activity observed by the police at the 17th Avenue residence. No information was provided that was predictive in nature. Mr. Hankins allegedly said that methamphetamine was being manufactured "nightly" at the 17th Avenue residence. *Affidavit* at ¶ 41. But no police investigation backed up this wild allegation.

In conclusion, Defendant continues to maintain that his trial attorney provided ineffective assistance of counsel by failing to file a motion arguing that the search of the 17th Avenue residence was not supported by probable cause.

### c. Franks Challenge

---

[2] Other cases provide similar examples of the type of police investigation that is sufficient to corroborate an informant's allegations. *See United States v. Amaya*, 52 F.3d 172 (8th Cir. 1995); *United States v. Fixen*, 780 F.2d 1434 (9th Cir. 1986).

G. Blair McCune
Attorney at Law
425 G. St., Suite 620
Anchorage, AK 99501-2137
Tel. (907) 644-8568, Fax (907) 644-9008
Email: mccune@gci.net

Mr. Ritchie initially raised two instances of intentionally or recklessly false statements in Detective Koch's affidavit which he claimed should have been challenged under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674 (1978).[3] The first instance is that Detective Koch failed to inform the magistrate that Mr. Hankins had been awake for five days on drugs without sleep. *Docket No.* 101 at 14. Although this court found that this information was not "material," Defendant believes that a substantial *Franks* claim was made. *Decision* at 14. Defendant must acknowledge that Mr. Hankins admitted he had a meth problem and that he was providing information in order to curry favor with the police. *Id.* But the fact that Mr. Hankins had been awake for five days on drugs was a much more significant matter than merely having a "meth problem." In addition, being awake for five days involves a different type of credibility deficiency than Mr. Hankins' bias and motive to fabricate to curry favor with the police.

The second *Franks* claim is closely related to the non-consensual search of the 17th Avenue residence referred to in Section A-1-a above. This court found that the illegal search was not material because Detective Koch did not rely on his observations in his affidavit. *Decision* at 14. But, as set out above, Defendant contends that Detective Koch

---

[3] Mr. Ritchie made additional claims in his *pro se Motion to Amend*. The first claim involves the juxtaposition of ¶ 35 and ¶ 36. In ¶ 35, Detective Koch stated that "two white males" were observed by an unnamed informant at a residence where methamphetamine manufacturing was taking place. The informant stated he was unable to get a good description of either of these white males. In the very next paragraph, ¶ 36, Detective Koch stated that Mr. Ritchie was a white male. Mr. Ritchie claims that Detective Koch misled the magistrate by implying Mr. Ritchie was one of the white males alleged to be present in ¶ 35. The second allegation also involves ¶ 36. Detective Koch stated that Mr. Ritchie had a criminal history "mainly consisting of possession and manufacturing controlled substances." In fact, Mr. Ritchie had never previously been convicted of manufacturing controlled substances, although he did have prior possession offenses. *Docket No.* 14-15.

8

presented Attachment A and ¶ 47 in his affidavit and search warrant application in a way that would have led the magistrate to believe that Detective Koch was relying on his observations.

Defendant requests that this court issued a certificate of appealability on his *Franks* claims.

### 2. Quantity of Drug Issue

This court summarized Defendant's claims concerning flaws in the calculations of the quantity of drugs at sentencing. *Decision* at 16-17. Defendant continues to maintain that his trial attorney provided him with ineffective assistance of counsel when he failed to move for an evidentiary hearing to contest these serious flaws.

This court found that Defendant did not claim that he had new evidence to present at an evidentiary hearing. *Decision* at 18. However, Defendant did argue that Mr. Hankins' statements about the six "cooks" were quite tenuous. Mr. Hankins was in custody for 63 days from the end of January through March 1999. *Trial Tr.* at 3-48. Also, he was in custody on April 29 and May 1, 1999. Obviously, he did not participate in "cooks" while in custody. Further, Mr. Hankins said that he himself attempted (and was convicted of) making methamphetamine three times in the limited time he was out of custody. But he admitted that Mr. Ritchie was not present on any of those occasions. *Trial Tr.* at 3-17, 58.

Defendant also argues that Mr. Hankins' statements with regard to the Ford truck were tenuous as well. This truck was not registered to Mr. Ritchie. *Trial Tr.* at 2-148. The police never saw Mr. Ritchie driving the truck. *Trial Tr.* at 3-99. Mr. Ritchie was seen driving the red Ford Tempo to the Executive Suites Motel on May 1, 1999. *Trial Tr.* at 3-183.

G. Blair McCune
Attorney at Law
425 G. St., Suite 620
Anchorage, AK 99501-2137
Tel. (907) 644-8568, Fax (907) 644-9008
Email: mccune@gci.net

9

Defendant went into great detail on the drug quantity issue in his *pro se* Motion to Amend. *Docket No.* 173 at 8-11. He carefully showed how double counting took place, how the purity levels alleged in the Presentence Report were incorrect, and pointed out the flaws and inconsistencies in Mr. Hankins' statements. Mr. Ritchie claims that his trial attorney was ineffective in not allowing him to present this evidence through testimony to the court at an evidentiary hearing.

Defendant requests a certificate of appealability on this issue.

### 3. Pre-Trial Evidentiary Hearing

Defendant requests a certificate of appealability on whether his attorney ineffectively handled the cross examination of DEA Agent Ian McKenzie at the evidentiary hearing on the motion to suppress Mr. Ritchie's statements.[4] This court referred to DEA Agent Yankovich's testimony that Mr. Ritchie had been advised of his Miranda rights. *Decision* at 21. But Defendant would point out that Agent Yankovich did not remember whether the rights were given orally from memory or from a card. *Evidentiary Hearing Tr.* at 16-17. Therefore, defendant contends that this testimony would not have been given great weight by the magistrate. Defendant also believes that a criminal defendant's statements are almost always prominently considered by a jury in determining guilt. If the statements had been suppressed, critical evidence would not have been admitted against Mr. Ritchie at trial.

---

[4] Mr. Richie pointed out to counsel that he made another claim regarding the motion to suppress his statements. Mr. Ritchie claimed that the federal agents' failure to tape record his statements was a violation of the due process clause the Alaska Constitution. *See Stephan v. State*, 711 P.2d 1156 (Alaska 1985); *Docket No.* 173 at 2-3. Counsel has declined to argue this issue, but has agreed to note that Mr. Ritchie maintains this claim is valid. *See United States v. Becerra-Garcia*, 397 F.3d 1167, 1173-74 (9th Cir. 2005) (noting inconsistency in cases holding evidence seized in compliance with federal law is admissible without regard to state law).

G. Blair McCune
Attorney at Law
425 G. St., Suite 620
Anchorage, AK 99501-2137
Tel. (907) 644-8568, Fax (907) 644-9008
Email: mccune@gci.net

Therefore, Mr. Ritchie contends that prejudice has been shown.

Defendant requests a certificate of appealability on this issue.

**B. Brady Claim**

Defendant requests a certificate of appealability on this issue. This court has summarized Defendant's claim that the Government's failure to disclose Ms. Horner's statement was a violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

In the *Decision*, this court found that Defendant's *Brady* claim would be denied because Mr. Ritchie was aware of or should have been aware of Ms. Horner's exculpatory evidence. *Id.* at 23-25. But this court also noted that the magistrate judge concluded that it was as unlikely as it was likely that defense counsel would have known what Ms. Horner told the agent. *Id.* at 24. This court disagreed with the magistrate judge's findings. *Id.* This court even went so far as to state that a claim that Horner would not have cooperated with Mr. Ritchie's defense would be specious. *Id.*

However, Defendant would point out that the magistrate judge heard Ms. Horner's testimony at an evidentiary hearing and was able to evaluate her demeanor. Obviously, this court had no such opportunity. Defendant contends that it was appropriate to defer to the magistrate judges on this issue. Although the magistrate judge ultimately ruled against Defendant on this issue, Defendant believes that the magistrate judge considered this to be a close question.

Defendant respectfully requests that a certificate of appealability be issued on this point.

**C. Insufficient Evidence**

This issue revolves around whether *United States v. Carrasco*, 257 F.3d 1045

G. Blair McCune
Attorney at Law
425 G. St., Suite 620
Anchorage, AK 99501-2137
Tel. (907) 644-8568, Fax (907) 644-9008
Email: mccune@gci.net

11

(9th Cir. 2001) established a new test for constructive possession. *Decision* at 25. Mr. Ritchie raised and argued this issue in his initial *Memorandum of Points and Authorities*. *Docket No.* 101 at 22-24. Counsel has nothing to add to this argument. Mr. Ritchie has requested that this issue be included among the issues for which this court grants a certificate of appealability.

### D. Booker/Fanfan

Defendant must acknowledge that this court must follow *United States v. Cruz*, __ F.3d __, 2005 WL 2243113 (9th Cir. September 16, 2005). In *Cruz*, the Ninth Circuit held that *United States v. Booker*, __ U.S. __, 125 S.Ct. 783 (2005) would not be applied retroactively to convictions that became final prior to the date of the decision. Defendant must also acknowledge that other circuit courts considering the issue have also decided against retroactive application. *See Cruz*, 2005 WL 2243113 at *2.

Defendant also argued that his case is different because his appellate counsel argued to both the Ninth Circuit and the United States Supreme Court that the drug quantities were elements that had to be proven beyond a reasonable doubt to the trial jury based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Decision* at 27. Defendant relied on *Davis v. United States*, 417 U.S. 333 (1974) in support of his position. *Id.* However, there is another argument supporting Defendant's position. If *Blakely v. Washington*, 542 U.S. 296 (2004) and *Booker* did not announce a "new rule" of constitutional law but were instead dictated by the precedent set out by the Court in *Apprendi*, the retroactivity rules set out in *Cruz* would not apply as a bar to Mr. Ritchie's § 2255 action. But, once again, Defendant must acknowledge that the Ninth Circuit in *Schardt v. Payne*, 414 F.3d 1025, 1034-35 (9th Cir. 2005) decided that *Blakely* did not announce a new rule of law.

G. Blair McCune
Attorney at Law
425 G. St., Suite 620
Anchorage, AK 99501-2137
Tel. (907) 644-8568, Fax (907) 644-9008
Email: mccune@gci.net

    Despite this Ninth Circuit precedent, Defendant requests that this court issue a certificate of appealability on this ground. Given the importance of *Booker* to the federal criminal justice system, it is likely that the United States Supreme Court will decide whether *Booker* should be applied retroactively and whether or not *Blakely/Booker* announced a new rule of law or were logical extensions of *Apprendi*. Obviously, if the Court decides such a case in Mr. Ritchie's favor, his 292 month sentence would most likely be vacated. Because of the importance of this issue to Mr. Ritchie and the criminal justice system in general, Defendant respectfully requests that this issue be preserved despite the Nine Circuit precedent referred to above.

### III. Conclusion

    Defendant respectfully requests that a certificate of appealability be issued by this court on the grounds stated above.

    DATED at Anchorage, Alaska December 2, 2005.

    RESPECTFULLY SUBMITTED,

    _____
    G. BLAIR McCUNE
    Attorney for Defendant

Certification

I certify that on December 2, 2005
I hand delivered a copy of the **MOTION FOR CERTIFICATE OF APPEALABILITY** to:

Mr. Richard L. Pomeroy
Assistant United States Attorney
U.S. Attorney's Office
222 West Seventh Avenue #9, Room 253
Anchorage, AK 99513-7567

_____
G. Blair McCune

G. Blair McCune
Attorney at Law
425 G. St., Suite 620
Anchorage, AK 99501-2137
Tel. (907) 644-8568, Fax (907) 644-9008
Email: mccune@gci.net

13